UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GEORGE JASON HELM,

                                    Petitioner,

        v.

RON VAN BOENING,

                                    Respondent.

No. C09-5569 FDB/KLS

**REPORT AND RECOMMENDATION**
**Noted for:  January 22, 2010**

        This case has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636 (b) (1) and Local MJR 3 and 4.    Petitioner George Jason Helm filed a 28 U.S.C. § 2254 habeas corpus petition related to his 2007 guilty plea, entered pursuant to a plea agreement, for one count of violation of a protective order.  Dkt. 4 and Dkt. 5 (memorandum in support).  Respondent filed an Answer (Dkt. 12) and submitted relevant portions of the state court record.  Dkt. 13.  Petitioner filed a reply.  Dkt. 14.

        Having carefully considered the parties' filings and the record relevant to the grounds raised in the petition, the undersigned recommends that Mr. Helm's habeas petition be denied and this action dismissed.

REPORT AND RECOMMENDATION - 1

# I. STATEMENT OF THE CASE

## A. Basis of Custody

Mr. Helm is in custody pursuant to his 2007 conviction by guilty plea, entered pursuant to a plea agreement, for one count of violation of a protection order. Dkt. 13, Exhs 1 and 2. The court sentenced Mr. Helm to a standard range sentence of 33 months. *Id.*, Exh. 1, p. 2.

## B. Factual Background

In his Brief of Respondent filed in the Washington Court of Appeals, the county prosecutor summarized the following facts leading up to Mr. Helm's 2007 conviction for violation of a protection order:

> On April 19, 2006, Bremerton police were called to Helm's residence by his girlfriend, Sarah Davis, who reported that Helm had assaulted and restrained her in the bedroom. Helm was not there when the police arrived. App. A (incident report). Helm was arrested the following morning at the Bangor naval facility for fourth degree assault and unlawful imprisonment. *Id.* (supp. Report of Dahle Roessel, 4/20/06).
>
> On April 21, 2006, Helm was charged in Bremerton Municipal Court, [footnote omitted] cause number 17099003, with fourth-degree assault (domestic violence) ("the assault case"). App. A. The trial court entered a domestic violence protection order, with Davis as the protected party. App. B. The court released Helm on personal recognizance, with instructions to obey the no-contact order and to reappear on May 18, 2006. App. C.
>
> Before that next hearing, however, Helm violated the court's order and contacted Davis. On May 16, Helm, in an intoxicated state, accosted Davis at a friend's residence, threatened to key her car, and attempted to force her into his car. App. D (incident report, at 3). Davis also revealed that they were living together again. *Id.*
>
> On May 18, in Bremerton Municipal Court cause number 17099004, Helm was charged with violation of a court order ("the Bremerton violation case"). App. D. [T]he court set bail jointly in the assault and Bremerton violation cases at $50,000. App. E.
>
> On May 25, 2006, Helm pled guilty as charged in both pending cases. App. F. In the statement of defendant on plea of guilty, which was not an *Alford*

REPORT AND RECOMMENDATION - 2

plea, Helm admitted to assaulting Davis and to contacting Davis in violation of the court's order. *Id.*, at 4. The statement also specifically noted that as a result of the plea, he would be prohibited from having contact with Davis, and that his DUI deferral (Kitsap County District Court no. 17099002) would be revoked. *Id.*, at 2.

The trial court imposed a sentence of 365 days, with 360 days suspended for two years in the assault case, to be served consecutively to the sentence for the violation of the court order. App. G. Helm was also required to complete a certified domestic violence perpetrators treatment program. *Id.* In the violation case, the court imposed a sentence of 365 days with 340 days suspended for two years, with similar conditions. App. H.

On July 9, 2006, Helm, apparently having served his jail sentence, again contacted Davis in contravention of the court's order. The police were called out to a park in Bremerton on the report that Helm had stolen Davis' car and was driving it in circles in the park. App. I (supp. Report of John Bogen 7/9/06). Helm parked the car and tried to walk away and was arrested. *Id.*

On July 10, the state charged Helm in Kitsap County Superior Court, cause no. 06-1-01056-4, with taking a motor vehicle without the owner's permission, and with misdemeanor violation of a court order ("the 2006 felony case"). App. I. The Court entered another no-contact order. App. J.

On July 26, 2006, Helm went to Davis's home, again in violation of the no-contact order. App. K (incident report, at 2). When Davis's sister told him to leave, Helm went out the front door and then forced his way back in through the side door. *Id.* Davis was sitting with her year-old nephew on her lap, and when Helm forced the door open, she and the child were knocked to the floor. *Id.* at 3. Helm grabbed Davis by her shirt and attempted to pull her retainer from her mouth, cutting her lip in the process. *Id.* Davis or her sister yelled that they were calling 911, and Helm fled the house. *Id.* The baby had a bump on his head and Davis had a cut lip and her left foot was bleeding. *Id.*

On July 28, 2006, as a result of this incident, the State filed an amended information, adding charges of residential burglary and felony violation of a court order (based on the assault against Davis). App. K.

On September 1, 2006, Helm again violated the court order by contacting Davis. App. L (incident report of 9/1/06). The police came to Helm's house in response to a call from Davis's mother. *Id.*, at 2. The mother stated that Davis was at Helm's house and had called her parents for help. *Id.*

When the police arrived, Davis's mother and step-father were standing outside the house. *Id.* The step-father pointed out that both Davis's and Helm's

cars were in the driveway. *Id.* However, the lights were off in the house and the shades were down. *Id.*

The step-father told the officer that Davis had called earlier and was crying and in fear for her safety; she was having a miscarriage. *Id.* Davis did not want him to call the police, but to just come get her. *Id.* The step-father could hear Helm in the background and then Helm took the phone from Davis and it went dead. *Id.* They called her back several times but there was no answer. *Id.* Davis's parents then went to Helm's house. *Id.* They knocked on the door and yelled, but there were no answers. *Id.* Davis's mother went to call the police while the step-father stood guard. *Id.* After listening to the step-father's account, the responding officer waited for back-up to arrive. *Id.,* at 3. While he was waiting, the mother returned from calling. *Id.*

The mother told the officer that she had been on the phone with her daughter. *Id.* Then she heard Helm yelling in the background. *Id.* Helm took the phone and started pushing buttons. *Id.* Davis asked him not to break it and he gave it back to her. *Id.* Davis got back on the line and whispered to her mother that she did not want to be there. *Id.* The mother then gave the phone to the step-father. *Id.*

Based on past incidents, Davis's parents believed Davis was being held against her will. *Id.* They were also afraid that Helm had hurt her and that she might not be able to leave. *Id.*

When the back-up arrived, the officers attempted to make contact using one of the vehicles' P.A. system. *Id.* When this was unsuccessful, one of the officers kicked the front door loudly and announced that it was the police. *Id.* He waited 10 seconds for a response, but there was none. *Id.* When after repeating that procedure there was again no response, the officer kicked the door open. *Id.* They announced their presence again and then entered the house. *Id.*

Davis, who was crying and appeared scared, came from one of the back rooms. *Id.* They asked her where Helm was. *Id.* Davis stated repeatedly that she did not know. *Id.* The police observed an open attic door, but Davis denied Helm was in the attic. *Id.* The police removed Davis from the house and swept the premises for other persons. *Id.* They found Helm hiding in the closet of the bedroom Davis had come out of. *Id.* Helm was arrested without further incident. *Id.*

Davis told the police that she did not feel she was free to leave the house. *Id.* She also told them that Helm had pushed her. *Id.*

On September 5, 2006, as a result of this incident, the State again amended the charges to add a count of unlawful imprisonment. App. L.

REPORT AND RECOMMENDATION - 4

On September 22, 2006, Helm entered a plea agreement with the State to the five counts contained in the second amended information. App. M. The parties agreed to jointly recommend a sentence of 17 months. *Id*., at 2-3. The plea was entered as an *Alford* plea. App. N, at 7. Despite the agreed recommendation, the trial court ordered total confinement of 15 months. App. O, at 3.

On June 18, 2007, Helm was released from McNeil Island Corrections Center. App. Q. The next day, he was arrested for violating the no contact order by contacting Davis. *Id*.

On August 2, 2007, the violation was resolved with a probation violation sanction of 60 days, with credit for the time served since June 19. App. R.

On September 7, 2007, the police were called to Davis's apartment. App. S (incident report, at 2). She reported that Helm had sat outside until she let him in. *Id*. Then he refused to leave, so she went out on the balcony, where she remained because she was afraid of what he would do to her if they were alone. *Id*. Eventually she had to use the bathroom, so she went inside. *Id*. While she was in the bathroom, Helm grabbed her and held her over the sink. *Id*. He pushed her against the mirror, and in the process, she hit her leg on the cabinet. *Id*. Her right cheek was red. *Id*. at 3.

Davis managed to get free and returned to the balcony, where she was able to get a neighbor's attention. *Id*. The neighbor called 911, and Helm left when he heard the neighbor asking for the apartment number. *Id*.

When the police came, Davis pointed out where two steak knives were missing from the block in the kitchen. *Id*. She also said Helm had taken a pair of scissors. *Id*. She turned over Helm's watch, which had come off during the struggle. *Id.*

The police found Helm hiding behind the garage area of the apartment complex. *Id*. He was wearing the green shirt Davis had described. *Id*. He was about 300 feet from Davis's apartment. *Id*.

Helm was placed under arrest. *Id*. The police searched the backpack Helm was wearing, and located a pair of scissors, three pairs of thong panties and a number of photographs and negatives. *Id*. Davis subsequently identified the scissors, panties and photos as hers. *Id*. Davis had not given Helm permission to take the items from her apartment. *Id*., at 3-4.

On September 10, 2007, the State charged Helm in Kitsap County Superior Court cause no. 07-1-01277-8 with felony violation of a court order,

REPORT AND RECOMMENDATION - 5

based on Helm's two prior convictions for violating a court order. App. S. The trial court also entered another no-contact order. App. T.

On October 19, 2007, Helm entered into a plea agreement. Helm pled guilty as charged, and the State agreed to recommend a mitigated exceptional sentence of 12 months and a day. App. U, at 2-3. The statement of defendant on plea of guilty specifically warned Helm that the court was not bound by the agreement:

> The judge does not have to follow anyone's recommendation as to sentence. The judge must impose a sentence within the standard range unless the judge finds substantial and compelling reasons not to do so.

App. V, at 3. Helm attested that his lawyer had explained to him and fully discussed with him all the provisions of the statement, and that he understood them. *Id*., at 7. His lawyer likewise attested that he had read and discussed the statement with Helm, and that he believed Helm was competent and understood the statement. *Id.* Finally, Helm also asserted that he had personally read the statement in its entirety, and understood it in full. *Id*., at 8.

On November 5, 2007, the trial court imposed the sentence. Despite the parties' agreed recommendation, the trial court imposed a sentence at the bottom range of the standard range, 33 months. App. W. No appeal was taken.

Dkt. 13, Exh. 4, pp. 1-9.

C.    **Procedural History**

The superior court entered the judgment and sentence on November 5, 2007. Dkt. 13, Exh. 1. Mr. Helm did not file a direct appeal from the judgment and sentence. Dkt. 4, p. 2 (CM/ECF pagination).

In August 2008, Mr. Helm filed a personal restraint petition in the Washington Court of Appeals challenging his 2007 conviction as well as his prior 2006 convictions. Dkt. 13, Exh. 5; see also Exh. 6. The Washington Court of Appeals dismissed the personal restraint petition as untimely because the petition challenged both the 2006 and 2007 convictions. *Id.*, Exh. 7.

REPORT AND RECOMMENDATION - 6

Mr. Helm sought review by the Washington Supreme Court. *Id.*, Exh. 8. Mr. Helm presented the following issues to the Washington Supreme Court:

> 1)      Are the attorneys in the municipal court convictions and 2006 superior court convictions ineffective for not disclosing pertinent evidence to the defendant?
>
> 2)      Does the evidence Helm provided meet the time bar exception of newly discovered evidence (Exhibits E, F, G, L, O, etc.) since they were never disclosed to Helm until recently?
>
> 3)      If not considered newly discovered evidence, what can the evidence be considered?

*Id.,* Exh. 8, pp. 1-2.

The Washington Supreme Court denied review on July 13, 2009. *Id.*, Exh. 9. The court determined that Mr. Helm's challenge to his 2007 conviction was timely, but also determined that the double jeopardy claim and ineffective assistance of counsel claim were without merit. *Id.*, Exh. 9, p. 2. The Washington Court of Appeals issued a certificate of finality on September 29, 2009. *Id.*, Exh. 10.

## II. ISSUES FOR FEDERAL HABEAS REVIEW

Mr. Helm filed his petition in this court on September 2, 2009 (Dkt. 1, p. 14), in which he presents this Court with the following grounds for federal habeas relief:

> 1)      Ineffective assistance of counsel
>
> 2)      Double Jeopardy
>
> 3)      Unreasonable bail

Dkt. 4, pp. 5-8 (CM-ECF pagination).

### III.  EXHAUSTION

Respondent concedes that Mr. Helm exhausted his first claim (ineffective assistance of counsel) and second claim (double jeopardy).  Dkt. 12, p. 7.  Respondent contends, however, that Mr. Helm failed to exhaust his third claim (unreasonable bail) because he did not present the claim to the Washington Supreme Court and that the third claim is procedurally barred.

For the reasons set forth more fully below, the undersigned agrees that Mr. Helm has failed to exhaust his third claim.

### IV.  EVIDENTIARY HEARING

The decision to hold a hearing is committed to the court's discretion.  *Williams v. Woodford*, 306 F.3d 665, 688 (9th Cir. 2002).   State court findings are presumptively correct in federal habeas corpus proceedings, placing the burden squarely on the petitioner to rebut the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.  *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007).  Because the deferential standards prescribed by § 2254 of the Antiterrorism and Effective Death Penalty Act (AEDPA) control whether to grant habeas relief, a federal court must taken into account those standards in deciding whether an evidentiary hearing is appropriate.  *Id*.

An evidentiary hearing is not required where the petition raises solely questions of law or where the issues may be resolved on the basis of the state court record.  *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998).  The petitioner must demonstrate that an evidentiary hearing would materially advance his claims and explain why the record before the court, or an expanded

record, is inadequate for review. *Totten*, 137 F.3d at 1176-77; see also Rule 8 of the Rules Governing 2254 Cases. It is not the duty of the state court to ensure that the petitioner develops the factual record supporting a claim. *Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) (citing *McKenzie v. McCormick*, 27 F.3d 1415, 1419 (9th Cir. 1994)); see also *Baja v. DuCharme*, 187 F.3d 1075, 1079 (9th Cir. 1999); *In re Rice*, 118 Wash.2d 876, 884, 828 P.2d 1086, cert. denied, 506 U.S. 958 (1992).

The court has completed its review of the petition and found that the claims presented by Petitioner may be resolved solely by reference to the state court record. Therefore, Petitioner's request for an evidentiary hearing is denied.

Likewise, Mr. Helm's request for discovery is denied. In his reply, Mr. Helm requests discovery of (1) a list of all documents, transcripts, recordings, etc. from the Kitsap County Superior Court and prosecutor's office, (2) the clerk's papers, (3) attorney's billing statements, (4) transcripts of plea acceptances and sentencings, and (5) recordings of video court arraignments. Dkt. 14, p. 9. As noted above, Respondent submitted relevant documents from Mr. Helm's state court proceedings pursuant to Rule 5 of Rules Governing Section 2254. Dkt. 13.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court's power to upset a state court's adjudication of a criminal case is very limited. A federal court shall not grant a habeas petition with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). A determination of a

factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Rule 5(c) of the rules governing § 2254 cases, provides that the respondent shall indicate in the answer to a habeas petition what transcripts are available and what proceedings have been recorded but not transcribed. The State must attach to its answer any parts of the transcript it deems relevant. Once this is done, the court, on its own motion or upon request of the petitioner may order that further portions of the existing transcripts be furnished or that certain portions of the non-transcribed proceedings be transcribed and furnished. Rules Governing Section 2254 Cases in the U.S. Dist. Cts., 28 U.S. C. Pt. VI, ch. 153, Rule 5 (emphasis added); *Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004). On habeas review, except in limited circumstances, the district court does not make independent factual determinations. *Id*. citing 28 U.S.C. § 2254(e); *United States ex rel. Green v. Greer*, 667 F.2d 585, 586 (7th Cir. 1981) (an examination of a record is not required if the petitioner fails to identify any incompleteness or inaccuracies in the facts before the district court.)

The Ninth Circuit's holding in *Richmond v. Ricketts*, 774 F.2d 957 (9th Cir. 1985), requiring that the district court examine all relevant parts of the state court record, is not inconsistent with these holdings or Rule 5. Under Rule 5, the determination of relevance is left to the discretion of the respondent. A demand for further documentation can only be executed by court order *sua sponte* or by request of the petitioner. § 28 U.S.C.A. 2254, Rule 5, Advisory Committee Notes, 1976 Adoption. Upon such a request the burden is placed on the petitioner to prove to the court that the excluded materials requested are relevant and necessary. When a dispute concerning relevance arises, the burden is on the petitioner to prove to the court that the

excluded materials are necessary for the petition. *Richmond v. Ricketts*, 640 F.Supp. 767 (Ariz. 1986).

If the Petitioner is alleging insufficiency of evidence to support factual findings, then 28 U.S.C. § 2254(f) provides that the burden shifts to Petitioner to produce those parts of the record pertinent to his claims. That subsection further states that if the Petitioner, because of indigency or other reason is unable to produce such part of the record, then the State shall do so and the court shall direct the State to do so by order directed to an appropriate State official. *Id*. The subsection further provides that if any of the pertinent record cannot be provided, the court shall determine under the existing facts and circumstances what weight shall be given to the State court's factual determination. *Id*.

Included in Respondent's submission of relevant state court record is the judgment and sentence, statement on guilty plea, plea agreement and state court briefing and rulings. Dkt. 13, pp. 1-2. Petitioner has not provided an explanation of how and why any of the records he is requesting are necessary for this court's analysis of his claims on the merit.

After complete review of the case, the court finds that additional portions of the record were not necessary for a complete habeas review and that an evidentiary hearing is not required in this case as Mr. Helm's habeas claims are matters that can be resolved by reference to the available state court record. His habeas claims raise purely issues of law, rather than factual disputes, and therefore, an evidentiary hearing to resolve questions of fact, is not necessary to resolve his claims.

## V. STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Engle v. Isaac*, 456 U.S. 107 (1983). Pursuant to the federal habeas

statute for state convictions, a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." § 2254(a)(1995). The Supreme Court has repeatedly held that federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

In a habeas corpus petition, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes the district court's standard of review of the state court's decision. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Under AEDPA, a federal court cannot grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA standard of review "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams*, 529 U.S. at 405-06). A state court decision also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially

REPORT AND RECOMMENDATION - 12

indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. *Id.*

A state court decision can involve an "unreasonable application" of the Supreme Court's clearly established precedent in the following two ways: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. However, "[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*

Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). As noted above, however, "[a] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## VI.  DISCUSSION

### A.  Third Claim  - Procedural Bar and Exhaustion

In his third claim for habeas relief, Mr. Helm claims that the trial court imposed an unreasonable bail even though he never missed a court appearance or was a flight risk.  Dkt. 4, p. 8.  Mr. Helm raised this issue in his personal restraint petition in the Washington Court of

Appeals. Dkt. 13, Exh. 5, pp. 8-10. He did not, however, raise this issue in his motion for discretionary review to the Washington Supreme Court. Dkt. 13, Exh. 8.

A state prisoner must exhaust state remedies with respect to each claim before petitioning for a writ of habeas corpus in federal court. *Granberry v. Greer*, 481 U.S. 129, 134 (1987).

28 U.S.C. § 2254 (b)(1) states, in pertinent part, that:

 (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28. U.S.C. § 2254 (b)(1) (Emphasis added.)

Section 2254(b)(1) provides that a habeas petition must be denied if the petitioner failed to exhaust his state court remedies. 28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Picard v. Connor*, 404 U.S. 270, 275 (1971). In order to exhaust state remedies, the petitioner must "fairly present" his federal claims to the state courts thereby giving the state the opportunity to address and correct alleged violations of the petitioner's federal rights. *Duncan*, 513 U.S. at 365; *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir.1999); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir.1996). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Voerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

REPORT AND RECOMMENDATION - 14

A complete round of the state's established review process includes presentation of a petitioner's claim to the state's highest court. *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1993), cert. denied 513 U.S. 935 (1994). However, "[s]ubmitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Consequently, presentation of a federal claim for the first time to a state's highest court on discretionary review does not satisfy the exhaustion requirement. *Castille*, 489 U.S. at 351; *Casey v. Moore*, 386 F.3d 896, 915-18 (9th Cir. 2004), cert. denied 545 U.S. 1146 (2005). But see *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available.").

For a claim to be cognizable in federal court, the claim must first be presented to the Washington State Supreme Court based upon the same federal legal theory and the same factual basis as the claim is subsequently asserted here. See, *Hudson*, 686 F.2d 826, 829-30 (9th Cir. 1982). Moreover, the claim must be presented as a federal constitutional violation at every level of the Washington state courts' review. *See Ortberg v. Moody,* 961 F.2d 135, 138 (9th Cir. 1992) (a petitioner must properly raise a habeas claim on every level of direct review in order to properly exhaust).

The record clearly reflects that Mr. Helm's third claim was not raised in the Washington Supreme Court and thus, it is unexhausted as it was not raised as a federal claim at every level of the state courts' review. State courts are not required to comb the record in order to discover the federal nature of the prisoner's claim; the federal claim must be contained within the four corners of the prisoner's state court brief or petition. *Baldwin v. Reese*, 541 U.S. 27, 31-32 (2004).

Additionally, both federal and state briefing rules forbid the practice of incorporation by reference. See Fed. R. App. P. 28-1(b); *Kibler v. Walters*, 220 F.3d 1151, 1153 (9th Cir. 2000); *Saldin Sec., Inc. v. Snohomish County*, 134 Wn.2d 288, 949 P.2d 370, 375 n.4 (1998) (Supreme Court will not review incorporated arguments from Court of Appeals briefing).

The record reflects that his third claim is also procedurally barred pursuant to RCW 10.73.090(3), RCW 10.73.140, and RAP 16.4(d), because more than one year has passed since his conviction became final and he has previously filed a personal restraint petition. Under Washington law, a defendant may not collaterally challenge a conviction more than one year after the conviction becomes final. RCW 10.73.090. Washington law also prohibits the filing of successive collateral challenges. RCW 10.73.140; RAP 16.4(d).

Mr. Helm's judgment was entered on November 5, 2007. Dkt. 13, Exh. 1. Having previously filed a personal restraint petition, Helm is barred from filing another collateral challenge regarding the third claim absent a showing of cause and prejudice or actual innocence.

### (i) Dismissal of Unexhausted Claim and Adjudication of "Mixed" Petition Not Required When Petitioner is Procedurally Barred From Returning to State Court

Because Mr. Helm's third claim is unexhausted, the Court is presented with a mixed petition containing both exhausted and unexhausted federal claims, which, in itself requires dismissal of the petition. Federal courts "may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines v. Weber,* 125 S. Ct. 1528, 1532-33 (2005). Instead, such petitions "must be dismissed for failure to completely exhaust available state remedies." *Jefferson v. Budge,* 419 F.3d 1013, 2005 WL 1949886 *2 (9th Cir. 2005) (citing *Rose v. Lundy*, 455 U.S. 509, 518-22 (1982)).

Before dismissing the petition, generally the Court is required to provide a petitioner with "the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Id.; see also Rhines*, 125 S. Ct. at 1535; *Tillema v. Long*, 253 F.3d 494, 503 (9th Cir. 2001) (court must provide *habeas corpus* litigant with opportunity to amend mixed petition by striking unexhausted claims). However, when a petitioner would be procedurally barred from returning to the state court to address the unexhausted claims, the Court need not provide Petitioner with this choice.

In this case, the record reflects that Mr. Helm is now procedurally barred from presenting his unexhausted third claim to the Washington State courts. Pursuant to RCW 10.73.090(1), no petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final. Mr. Helm's judgment was entered on November 5, 2007. Dkt. 13, Exh. 1. He did not file a direct appeal from the judgment and sentence. Dkt. 4, p. 2. He filed a collateral appeal relating to his double jeopardy and ineffective assistance claims (Dkt. 13, Exhs. 5 and 6), which were considered on the merits by the Washington Supreme Court. *Id.*, Exhs. 8 and 9. However, his collateral appeal did not include his unreasonable bail claim, the third claim. *Id.*, Exh. 8. Because it is now more than one year since his judgment became final, and he has already filed a collateral challenge to the conviction, Mr. Helm cannot file a new collateral challenge.

Thus, Mr. Helm's third claim is procedurally barred and not cognizable in federal court absent a showing of cause and prejudice, or a showing of actual innocence. Only if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice," will he be entitled to federal *habeas corpus* review. *See Boyd v. Thompson,* 147 F.3d 1124, 1126 (9th Cir. 1998) (citing *Coleman*, 501 U.S. 722 at 750.

### (ii) Cause and Actual Prejudice To Overcome Procedural Default

To satisfy the "cause" prong, petitioner must show that 'some objective factor external to the defense" prevented him from complying with the state's procedural rule. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Objective factors constituting "cause" include "interference by officials" making compliance with the procedural rule impracticable, as well as "a showing that the factual or legal basis" for the claims "was not reasonably available." *Id*. at 493-94 (internal quotes omitted). Constitutionally ineffective assistance of counsel also constitutes cause, but any attorney error short of that will not excuse procedural default. *Id.* at 494.

The mere fact that a petitioner is *pro se* or lacks knowledge of the law is insufficient to satisfy the cause prong. That is, "[w]hen a pro se petitioner is able to apply for post-conviction relief to a state court, the petitioner must be held accountable for failure to timely pursue his remedy to the state supreme court." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (finding petitioner's claims of illiteracy and lack of help in appealing post-conviction petition, though unfortunate, to be insufficient to meet cause standard); *Boyd*, 147 F.3d at 1126-27. Once a petitioner establishes cause, he must show "'actual prejudice' resulting from the errors of which he complains." *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 168 (1982)). Such prejudice exists if the alleged errors worked to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). In the alternative, a *habeas corpus* petition may be granted without a showing of cause in those "extraordinary instances when a constitutional

violation probably has caused the conviction of one innocent of the crime." *McCleskey*, 499 U.S. at 494; *Murray*, 477 U.S. at 495-96.

Mr. Helm has made no showing that some objective factor external to his defense prevented him from complying with Washington's procedural bar rule. Because Mr. Helm "cannot establish any reason, external to him, to excuse his procedural default," this Court need not address the issue of actual prejudice." *Boyd*, 147 F.3d at 1127; *Thomas v. Lewis*, 945 F.2d 1119, 1123 n.10 (9th Cir. 1991). Furthermore, because Mr. Helm does not present new evidence of actual innocence, this is not the kind of extraordinary instance where the petition should be granted despite the absence of a showing of cause. *McCleskey*, 499 U.S. at 494; *Murray*, 477 U.S. at 495-96. See also, *Schlup v. Delo*, 115 S. Ct. 851, 867 (1995) ("The exception is available only where the petitioner 'supplements his constitutional claim with a colorable showing of factual innocence.'")

Mr. Helm has not provided the Court with any evidence of cause and prejudice or a fundamental miscarriage of justice. Because he cannot excuse his procedural default, his third claim alleging unreasonable bail is not cognizable in this federal habeas corpus proceeding.

The court now turns to the merits of Mr. Helm's first and second claims.

**B.      First Claim – Ineffective Assistance of Counsel**

To support a claim of ineffective assistance of counsel, a petitioner must satisfy a two-part standard. First, the petitioner must show that counsel's performance was so deficient that it "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). This burden is highly demanding, as the defendant must prove he was denied a fair trial by the gross incompetence of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). Second, the petitioner must show that the deficient performance prejudiced the defense

so "as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Unless the defendant's showing satisfies both parts of the analysis, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. Because the petitioner must satisfy both prongs of the *Strickland* test, a court need not address both prongs if the petitioner makes an insufficient showing of one prong. *Id*. at 697. Judicial review of an attorney's performance is "highly deferential and doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 124 S. Ct. 1, 4 (Oct. 20, 2003).

Under the first prong of the *Strickland* test, the question is whether counsel's assistance was reasonable under the totality of the circumstances, viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690. To succeed under the first prong, the petitioner must show the attorney's conduct "reflect[s] a failure to exercise the skill, judgment, or diligence of a reasonably competent attorney." *United States v. Vincent*, 758 F.2d 379, 381 (9th Cir.), cert. denied, 474 U.S. 838 (1985). There is a strong presumption that counsel's performance fell within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 689.

"The presumption impacts on the burden of proof and continues throughout the case, not dropping out just because some conflicting evidence is introduced." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption." *Id*. "Therefore, where the record is incomplete or unclear about [counsel's] actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." *Id*. (quoting *Waters v. Thomas*, 46 F.3d 1506, 1516 (11th Cir. 1995) (en banc)). The presumption of competence, like the "presumption of innocence" in a criminal trial, continues throughout the

habeas proceedings. *Chandler*, 218 F.3d at 1314 n.15. The petitioner continually bears the burden of persuasion on the issue of competence. *Id.* "Never does the government acquire the burden to show competence, even when some evidence to the contrary might be offered by the petitioner." *Id.*

Under the second prong, the "defendant must show the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. It is not enough that counsel's errors had "some conceivable effect on the outcome." *Id.* at 693. The defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the context of counsel's advice to plead guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This test does not focus on the defendant's subjective contention, but instead employs an objective standard. *Id.* at 59-60; *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995). For example, the alleged failure to pursue exculpatory evidence is not prejudicial in the case of a guilty plea if it would not have affected the outcome of a trial because a defendant under an objective standard would not have insisted on going to trial. *Hill*, 474 U.S. at 59-60; *Sanchez*, 50 F.3d at 1454.

Mr. Helm claims that his counsel was ineffective when he (1) failed to conduct a thorough investigation of the facts and possible defenses of the charge; (2) failed to adequately prepare for trial; (3) failed to adequately consult with him to discuss pretrial motions, discovery, investigation and trial strategy and tactics; (4) failed to investigate Mr. Helm's mental and emotional status and incompetence to stand trial; (5) failed to develop a viable

defense strategy; and (6) failed to withdraw Mr. Helm's guilty plea, enforce the plea agreement and to appeal.  Dkt. 5, pp. 3-8.

In dismissing Mr. Helm's ineffective counsel claim, the Washington Court of Appeals stated:

> With regard to the claim that all of Helm's assignments of error are based on newly discovered evidence and therefore exempt from the time bar, we observe that many of his assertions are general and contain no evidentiary support whatsoever.  For example, Helm contends that he was denied access to witnesses, the law library and legal materials, and that his attorney engaged in inadequate trial preparation, failed to interview witnesses, and failed to attack the State's proof against him.  These claims do not contain any factual support and thus do not appear to be based on newly discovered evidence.  Nor do they trigger the remaining time bar exceptions.

Dkt. 13, Exh. 7, p. 2.

Mr. Helm's contentions in this case similarly lack evidentiary support.  For example, Mr. Helm claims that his attorney was ineffective for not seeking his medical records and failing to request a competency hearing, but provides no evidentiary support that such an assessment or hearing was necessary.  He also makes unsupported allegations that his attorney was ineffective because his pretrial investigation was inadequate, he failed to adequately prepare for trial, and did not engage in trial strategy discussions with Mr. Helm.   Mr. Helm's allegations of pre-plea ineffective assistance are barred by his guilty plea.

A guilty plea is more than "an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial."  *Brady v. United States*, 397 U.S. 742, 748 (1970).  "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the guilty plea."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Consequently, a petitioner who enters a guilty

plea cannot challenge the validity of the plea on the basis of pre-plea errors, including errors allegedly committed by counsel. *Brady*, 397 U.S. at 756-57; *United States v. Broce*, 488 U.S. 563, 569-72 (1989). As the Supreme Court has explained,

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*Broce*, 488 U.S. at 569.

Mr. Helm's guilty plea "precludes him from challenging alleged constitutional violations that occurred prior to the entry of that plea." *Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992); see also *Moran v. Godinez*, 40 F.3d 1567, 1577 (9th Cir. 1994). Even the alleged post-conviction discovery of exculpatory evidence does not allow the defendant to overturn the guilty plea. *United States v. Ruiz*, 536 U.S. 622, 629-33 (2002) (non-disclosure of impeachment evidence); *Brady*, 397 U.S. at 757 (defendant misapprehended the quality of the prosecution's case); *Broce*, 488 U.S. at 573 (counsel failed to point out potential defense); *McMann v. Richardson*, 397 U.S. 759, 770 (1970) (counsel misjudged the admissibility of a confession).

Instead of entering a guilty plea, Mr. Helm could have challenged the prosecution's case against him. *Broce*, 488 U.S. at 571. Mr. Helm "chose not to, and hence relinquished that entitlement." *Id*. Although Mr. Helm may believe he made a strategic miscalculation in light of allegedly newly discovered evidence, "such grounds do not justify setting aside an otherwise valid guilty plea." *Id*.

REPORT AND RECOMMENDATION - 23

Thus, Mr. Helm's allegations of pre-plea ineffective assistance, including his claims that counsel failed to investigate and prepare a defense, are barred by Mr. Helm's guilty plea.

Mr. Helm also argues that his counsel was ineffective for failing to raise an issue of mental incompetence and by failing to enforce the plea agreement, wherein the prosecutor agreed to recommend an exceptional sentence. The Washington Supreme Court rejected this claim as follows:

> … And Mr. Helm's claim that his plea agreement was breached when the trial court declined to impose the exceptional mitigated sentence proposed by the State is unpersuasive. His guilty plea statement shows that he understood that the court was not required to follow the State's sentencing recommendation. Mr. Helm's remaining claims, which mainly involve ineffective assistance of counsel, consist of a vague collection of bald assertions and conclusory allegations insufficient to justify collateral relief. *See In re Pers. Restraint of Rice,* 118 Wn.2d 876, 886, 828 P.2d 1086 (1992).

Dkt. 13, Exh. 9.

The state court reasonably determined that Mr. Helm made no more than bald assertions and conclusory allegations regarding his claims that his counsel had been ineffective. Mr. Helm presents no evidence here to show that he was mentally incompetent at the time of his plea nor has he presented any evidence to show that his counsel or the court should have been aware of any issue as to his competency. The trial judge found Mr. Helm understood his statement on plea of guilty, that Mr. Helm's plea was knowing and intelligent, and that Mr. Helm understood the charges and consequence of his plea. Dkt. 13, Exh. 2, p. 8.

The state court also reasonably determined that Mr. Helm's claim concerning a breach of the plea agreement was without merit. If the defendant is aware of the maximum possible sentence, and is aware the sentencing court is not bound by the prosecution's sentencing recommendations, an erroneous sentencing prediction by the defendant or defense counsel does

not render a plea invalid.  See *United States v. Oliveros-Orosco*, 942 F.2d 644, 646 (9th Cir. 1991); *United States v. Garcia*, 909 F.2d 1346, 1348 (9th Cir. 1990).  "An accused's mere "understanding" that he will have to serve a lesser sentence . . . will not invalidate a guilty plea." *Smith v. McCotter*, 786 F.2d 697, 699 (5th Cir. 1986).

Mr. Helm entered his plea to take advantage of a plea agreement.  Dkt. 13, Exhs. 2 and 3.  In exchange for Mr. Helm's guilty plea, the prosecutor had agreed to recommend an exceptional sentence below the standard range.  *Id.*, Exh. 3, pp. 2-3.  The prosecutor also agreed not to pursue additional charges including additional counts of violating the protection order and burglary.  *Id.*, Exh. 3, p. 2.  Mr. Helm reviewed the plea agreement and the consequences of the guilty plea with his counsel.  *Id.*, Exhs. 2 and 3.  Mr. Helm was expressly informed in his written statement that "The judge does not have to follow anyone's recommendation as to sentence."  *Id.*, Exh. 2, p. 3.  Mr. Helm was expressly informed that "The judge must impose a sentence within the standard range unless the judge finds substantial and compelling reasons not to do so."  *Id.*, Exh. 2, p. 3.[1]

Mr. Helm was also fully advised of his rights, the elements of the plea agreement, and the consequences of the guilty plea in this case, including the sentencing consequences.  *Id.*, Exhs. 2 and 3.  The judge found as fact that Mr. Helm understood these consequences.  *Id.*, Exh. 2, p. 8.  Mr. Helm fails to show a breach of the plea agreement, and he fails to show he was not properly informed that the judge was not bound by the sentencing recommendation.  The judge did not err or breach the plea agreement by imposing the standard range sentence, and counsel had no basis to seek to withdraw the plea when the judge sentenced Mr. Helm.

---

[1]Moreover, the trial court was not a party to the plea agreement and therefore, could not have breached it.  Mr. Helm has not demonstrated that the prosecution did anything contrary to the representations on the basis of which the plea was entered.  On the facts presented, therefore, there was no breach.

Because Mr. Helm pled guilty and received a standard range sentence, he also had no basis to appeal from the judgment and sentence. RCW 9.94A.585(1); *State v. Wiley*, 26 Wn. App. 422, 425, 613 P.2d 549, review denied, 94 Wn.2d 1014 (1980); *State v. Friederich-Tibbets*, 123 Wn.2d 250, 252, 866 P.2d 1257 (1994).

The undersigned finds that the state court decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent and therefore, recommends that the Court dismiss Mr. Helm's first claim that he was denied effective assistance of counsel.

## C.      Second Claim – Double Jeopardy

Mr. Helm alleges his conviction violates the Double Jeopardy Clause because the Department of Corrections imposed a sanction for a violation of the term of supervision for the same event leading to his conviction. Dkt. 5, p. 10.

The Washington Supreme Court rejected this claim:

> But contrary to his argument, double jeopardy principles did not preclude him from also being sanctioned for violating conditions of supervision on an earlier conviction based on the same incident. *See State v. Guy,* 87 Wn. App. 238, 246-47, 941 P.2d 674 (1997), *aff'd sub nom. State v. Ammons*, 136 Wn.2d 453, 963 P.2d 812 (1998) (conviction that serves as basis for enforcing previous sentence does not implicate double jeopardy).

Dkt. 13, Exh. 9, p. 2.

Federal law is not to the contrary. The Double Jeopardy Clause guarantees that no person shall "be subject of the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend V. The Double Jeopardy Clause affords three basic protections: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments

for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (other citations omitted)). The Double Jeopardy Clause, however, does not prohibit a criminal prosecution for conduct that also served as a basis for revocation of parole or probation imposed for a separate conviction. *United States v. Soto-Olivas*, 44 F.3d 788, 789 (9th Cir. 1995); *Parr v. Quaterman*, 472 F.3d 245, 254 (5th Cir. 2006); *Stringer v. Williams*, 161 F.3d 259, 262 (5th Cir. 1998); *United States v. Woods*, 127 F.3d 990, 991-93 (11th Cir. 1997).

Mr. Helm has not shown that the state court adjudication of the double jeopardy claim was objectively unreasonable nor is the state court decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Therefore, the undersigned recommends that the Court should dismiss Mr. Helm's second claim of double jeopardy.

## VII. SUMMARY CONCLUSION

Based on the foregoing discussion, the undersigned recommends that Mr. Helm's habeas petition should be **denied**, and this action **dismissed**. No evidentiary hearing is required as the record conclusively shows that Petitioner is not entitled to relief.

## VIII. CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Based on a thorough review of the record and analysis of the law in this case, the undersigned concludes that Mr. Helm is not entitled to a COA with respect to any of the claims asserted in his petition because he has not demonstrated that jurists of reason could disagree with the district court's resolution of his constitutional claims or could conclude the issues presented are adequate to deserve encouragement to proceed further.

## IX.  WRITTEN OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).

Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **January 22, 2010**, as noted in the caption.


DATED this __30th__ day of December, 2009.



Karen L. Strombom
United States Magistrate Judge